1  KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
   MICHAEL J. KUMP (SBN 100983)
2    mkump@kwikalaw.com
   GREGORY P. KORN (SBN 205306)
3    gkorn@kwikalaw.com
   JONATHAN STEINSAPIR (SBN 226281)
4    jsteinsapir@kwikalaw.com
   808 Wilshire Boulevard, 3rd Floor
5  Santa Monica, California  90401
   Telephone: 310.566.9800
6  Facsimile: 310.566.9850

7  HILL & ROBBINS, PC
   JOHN F. WALSH (SBN 135530)
8    johnwalsh@hillandrobbins.com
   JENNIFER H. HUNT (Pro Hac Vice)
9    jhunt@hillandrobbins.com
   1441 18th Street, Suite 100
10 Denver, Colorado  80220
   Telephone: 303.296.8100
11 Facsimile: 303.296.2388

12 Attorneys for Plaintiff and Counterclaim-
   Defendant STARZ ENTERTAINMENT, LLC

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16
   STARZ ENTERTAINMENT, LLC, a        CASE NO. CV 07-01895 VBF (PJWx)
17 Colorado limited liability company,
                                       STARZ'S NOTICE OF MOTION
18              Plaintiff,             AND MOTION FOR SUMMARY
          vs.                          JUDGMENT AS TO BUENA VISTA
19                                     TELEVISION, INC.'S
   BUENA VISTA TELEVISION, INC., a     COUNTERCLAIM, OR IN THE
20 California corporation,             ALTERNATIVE, FOR PARTIAL
                                       SUMMARY JUDGMENT AS TO
21              Defendant.             CLAIMS AND ISSUES;
                                       MEMORANDUM OF POINTS AND
22 AND RELATED COUNTERCLAIM.           AUTHORITIES IN SUPPORT
                                       THEREOF
23
                                       Judge:  Hon. Valerie Baker Fairbank
24
                                       Date:   September 15, 2008
25                                     Time:  1:30 p.m.
                                       Room: 9 (Spring Street)
26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

81107.00005/39984

STARZ'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO BVT'S COUNTERCLAIM

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   **TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF**

2   **RECORD:**

3        **PLEASE TAKE NOTICE** that on September 15, 2008, at 1:30 p.m., or as

4   soon thereafter as the matter can be heard in Courtroom 9 of the above entitled

5   Court, located at 312 N. Spring Street, Los Angeles, California, 90012, before the

6   Honorable Valerie Baker Fairbank, Plaintiff and Counterclaim Defendant Starz

7   Entertainment, LLC ("Starz") will appear and move for summary judgment in its

8   favor as to the entirety of Defendant and Counterclaimant Buena Vista Television

9   Inc.'s ("BVT") Counterclaim, including all four purported claims for relief

10  contained therein.

11        Starz's motion is made pursuant to Rule 56 of the Federal Rules of Civil

12  Procedure on the grounds that there are no genuine issues of material fact and that

13  Starz is entitled to judgment as a matter of law in its favor on BVT's Counterclaim.

14  BVT's Counterclaim purports to state four claims for relief: (1) breach of contract;

15  (2) breach of the covenant of good faith and fair dealing; (3) copyright infringement;

16  and (4) declaratory relief.  As explained in detail in the attached Memorandum of

17  Points and Authorities, BVT's four purported claims for relief rest on <u>three</u> alleged

18  breaches of the License Agreements that grant Starz exclusive rights in certain

19  films.  BVT has the burden of proof at trial on all four purported claims for relief.

20  However, BVT cannot come forward with sufficient facts to discharge its burden of

21  showing that a genuine issue for trial exists on any of these purported contract

22  breaches.  Accordingly, all four purported claims fail, and Starz is entitled to

23  judgment as a matter of law under Fed. R. Civ. P. 56.  *See Celotex Corp. v. Catrett*,

24  477 U.S. 317, 325 (1986).

25        If for any reason, the Court finds it inappropriate to enter summary judgment

26  on the entirety of BVT's Counterclaim, Starz moves in the alternative for partial

27  summary judgment as to each individual claim, and on the following issues: (1)

28  Starz has not breached or repudiated any obligations relating to "rent-a-system"

1   obligations; (2) Starz has not breached any obligations regarding the distribution and
2   exhibition of licensed Pictures on certain "tiers"; and (3) Starz has not breached any
3   obligations regarding the exhibition of the Pictures over the Internet using
4   "substandard transmission quality."

5       This Motion is based upon this Notice, the proposed Statement of
6   Uncontroverted Facts and Conclusions of Law, the attached Memorandum of Points
7   and Authorities, the Declarations of Richard Turner, Richard Waysdorf, Jonathan P.
8   Steinsapir and supporting Exhibits filed concurrently herewith, all papers and
9   pleadings on file in this action, and on such other and further evidence and argument
10  as the Court may lawfully consider in the exercise of its wise discretion.

11      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Rule 56, Starz
12  is filing and serving concurrently herewith: (1) a proposed Statement of
13  Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for
14  Partial Summary Judgment; and (2) a proposed Judgment in Favor of Starz.

15      **PLEASE TAKE FURTHER NOTICE** that this Motion is made following
16  the conference of counsel pursuant to Local Rule 7-3, which took place on June 25,
17  2008. Declaration of Jonathan P. Steinsapir ("Steinsapir Decl.") at ¶ 2.

18

19  DATED: August 13, 2008      Respectfully submitted,

20                                       KINSELLA WEITZMAN ISER KUMP &
21                                       ALDISERT LLP

22                                       HILL & ROBBINS, P.C.

23

24                                       By: _____
25                                       Michael J. Kump
26                                       Attorneys for Plaintiff and Counterclaim
27                                       Defendant STARZ ENTERTAINMENT,

28                                       LLC

*Left margin (vertical text):* KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ............................................... 3

    A.   The License Agreements and BVT's Counterclaim ........................... 3

    B.   The Rent-A-System "Dispute" ......................................................... 4

    C.   The "Packaging" Dispute .................................................................. 9

    D.   The "Internet Transmission Quality" Dispute ................................. 12

III. LEGAL STANDARDS GOVERNING MOTIONS FOR SUMMARY
    JUDGMENT .......................................................................................... 13

IV.  SUMMARY JUDGMENT SHOULD BE GRANTED ON THE
    COUNTERCLAIM. ............................................................................... 13

    A.   Starz is Entitled to Summary Judgment on Those Portions of
        BVT's First, Second and Fourth Claims for Relief Relying on
        Alleged Breaches of the "Rent-a-System" Provision. ..................... 13

        1.   The Breach of Contract Claim ................................................. 13

        2.   Breach of the Implied Covenant .............................................. 16

        3.   The Declaratory Relief Claim .................................................. 18

    B.   Starz is Entitled to Summary Judgment on Those Portions of
        BVT's First and Third Claims for Relief Relating to Exhibition
        of Starz Channels on Certain Digital Cable Tiers. ........................... 19

    C.   Starz Is Entitled to Summary Judgment on Those Portions of
        BVT's First Claim Relating to Alleged Breaches of the License
        Agreements Concerning "Internet Transmission Quality." ............. 21

V.   CONCLUSION ....................................................................................... 24

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ......................................................................18, 19

5

*Celador Int'l Ltd. v. The Walt Disney Co.*,
6
   347 F. Supp. 2d 846 (C.D. Cal. 2004) ......................................16, 17

7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................13

8

*Eichman v. Fotomat Corp.*,
9
   880 F.2d 149 (9th Cir. 1989) ............................................................22

10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................13, 22

11

*Pacific Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*,
12
   411 F.2d 889 (9th Cir. 1969) ......................................................14, 15, 16

13

*Thor Seafood Corp. v. Supply Mgmt. Servs.*,
   352 F. Supp. 2d 1128 (C.D. Cal. 2005) ..........................................19

14

15

**STATE CASES**

16

*Bank of the W. v. Super. Ct.*,
17
   2 Cal. 4th 1254 (1992) ..........................................................................19

18

*Bionghi v. Metropolitan Water District*,
   70 Cal. App. 4th 1358 (1999) ............................................................17

19

*Golden W. Baseball Co. v. City of Anaheim*,
20
   25 Cal. App. 4th 11 (1994) ..................................................................15

21

*Guerrieri v. Severini*,
   51 Cal. 2d 12 (1958) ......................................................................13, 14

22

*Taylor v. Johnston*,
23
   15 Cal. 3d 130 (1975) ..........................................................................14

24

*Wiz Tech., Inc. v. Coopers & Lybrand*,
   106 Cal. App. 4th 1 (2003) ..................................................................23

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**FEDERAL STATUTES**

28 U.S.C. § 2201..................................................................................18

U.S. Const. art. III, § 2...................................................................18, 19

**STATE STATUTES**

Cal. Civ. Code § 1636........................................................................19

**RULES**

Federal Rules of Civil Procedure
     Rule 30..................................................................................2, 22
     Rule 56................................................................................13, 21

**TREATISES**

Restatement (Second) of Contracts,
     § 250, comment b .............................................................15

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Starz Entertainment LLC ("Starz") owns and operates the Starz, Encore, Vongo, and Starz Play movie channels and on-demand services that consumers obtain through cable, satellite, and Internet transmissions.  Buena Vista Television, Inc. ("BVT") is a subsidiary of the Walt Disney Company, and licenses films to Starz.  BVT is violating Starz's exclusive rights in those Disney films by permitting consumers to use Internet services such as Apple iTunes to buy those same films electronically.

To detract from the simplicity of Starz's claims, BVT chose to cobble together a motley collection of purported claims for relief to assert as a Counterclaim.  However, the discovery process has confirmed that BVT has no evidence to support any of these claims, and the Court should grant summary judgment in favor of Starz on the entirety of the Counterclaim.

BVT's Counterclaim purports to state four claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) copyright infringement; and (4) declaratory relief.  As explained below, however, these four claims for relief rest entirely on <u>three</u> alleged breaches of the License Agreements that grant Starz exclusive rights in the films at issue.  None withstand scrutiny.

<u>First</u>, BVT alleges that Starz breached and/or repudiated the License Agreements by not complying with Starz's obligation to accept films on a so-called "rent-a-system" basis.  (Counterclaim at ¶ 23.)  Subject to certain conditions, the "rent-a-system" provisions in the 1999 License Agreement require Starz to license certain pictures that were <u>not</u> produced or financed by Disney, but that Disney nevertheless theatrically distributed in the United States.  BVT has offered only <u>one</u> such film since it entered into the 1999 License Agreement – *Apocalypto*.  Starz <u>accepted</u> the film for licensing.  (Statement of Undisputed Facts ("UF") at ¶¶ 7-8.) As to the claim Starz "anticipatorily repudiated" the rent-a-system obligations, BVT

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   presents no evidence that establishes any such thing.  The claim is based on

2   correspondence between the parties' transactional counsel just prior to and after the

3   filing of this litigation.  As the Court will see from a review of those letters, they

4   contain nothing close to a repudiation of the contract.

5        <u>Second</u>, BVT alleges that Starz violated the License Agreements by "entering

6   into agreements with one or more cable and/or satellite system operators for the

7   distribution and exhibition of licensed Pictures on digital basic tiers that do not meet

8   the requirements for exhibition on Pay Television under the License Agreements."

9   (Counterclaim at ¶ 24.)  BVT's allegations – based on a misreading of the 1999

10  License Agreement and unsupported by any evidence – fail to articulate a coherent

11  theory as to why Starz's affiliation agreements with cable and satellite systems

12  violate the License Agreements.  To the contrary, the available evidence establishes

13  that Starz has never been distributed on prohibited cable or satellite tiers and has

14  always fully complied with the requirements of the License Agreements.

15       <u>Third</u>, BVT alleges that Starz breached the 1999 License Agreement by

16  "delivering licensed Pictures for exhibition over the Internet using substandard

17  transmission quality."  (Counterclaim at ¶ 24.)  This claim fails for two distinct

18  reasons.  First, BVT cannot come forward with sufficient evidence to meet its

19  burden that Starz is in breach of any such obligation.  Indeed, it admitted in a 2003

20  amendment to the 1999 License Agreement that Starz's exploitation of the Disney

21  films through Internet transmissions "compl[ies] with the terms of the [1999

22  License] Agreement."  (UF at ¶ 22, Turner Decl. at ¶ 14, Ex. C at p. 2, § 5.)  And

23  BVT's own Rule 30(b)(6) witnesses on this subject admit that they are aware of no

24  evidence to support this alleged contractual violation.  (UF at ¶¶ 25, 27-28,

25  Steinsapir Decl., Ex. R (Cohen Depo. at 215:3-8), Ex. S (Marinelli Depo. at 163:24-

26  164:15).)  Second, and not surprisingly in light of the foregoing, BVT did not give

27  notice of this supposed breach and provide Starz with an opportunity to cure, as

28  required by the contract, and thus failed to exhaust contractual remedies.  (UF at ¶

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   26, Steinsapir Decl., Ex. R (Cohen Depo. at 215:9-14, 216:11-18).)

2       For these reasons and those that follow, the Court should issue summary

3   judgment in favor of Starz on the entirety of BVT's Counterclaim.

4   **II.    STATEMENT OF UNDISPUTED FACTS**

5       **A.    The License Agreements and BVT's Counterclaim**

6       To obtain programming for its movie channels and services, Starz enters into

7   long-term license agreements with studios that produce and/or distribute motion

8   pictures, often referred to as "output deals."  Through these output deals, Starz

9   obtains the exclusive right to exhibit the studios' films to its cable, satellite, and

10  Internet customers during defined license periods.

11      Two of Starz's largest output agreements are with BVT.  As a wholly-owned

12  subsidiary of the Walt Disney Company ("Disney") and the successor-in-interest to

13  Walt Disney Pictures and Television, BVT has the right to license the Disney films.

14  The first of these agreements is dated September 27, 1993 (the "1993 License

15  Agreement").  (UF at ¶ 1, Turner Decl. at ¶ 2, Ex. A.)  The second of these two

16  output agreements is dated August 16, 1999 (the "1999 License Agreement").  (UF

17  at ¶ 2, Turner Decl. at ¶ 3, Ex. B.)  (The 1993 and 1999 License Agreements are

18  collectively referred to herein as the "License Agreements.")  The License

19  Agreements provide Starz with the exclusive right during certain time "windows" to

20  exhibit on Television films that are theatrically distributed by Disney each year.

21      BVT's Counterclaim purports to state four claims for relief: (1) breach of

22  contract; (2) breach of the covenant of good faith and fair dealing; (3) copyright

23  infringement; and (4) declaratory relief.  (Counterclaim at ¶¶ 21, 26, 30, 39.)  These

24  four claims for relief rest on three purported breaches of the License Agreements.

25      BVT's <u>first claim for relief</u> – breach of contract – alleges that Starz breached

26  three distinct obligations arising out of the License Agreements.

27      •   <u>First</u>, BVT alleges that Starz breached its obligations to accept certain

28          pictures on a so-called "rent-a-system" basis.  (Counterclaim at ¶ 23.)

- • <u>Second</u>, BVT alleges that Starz breached the License Agreements by "entering into agreements with one or more cable and/or satellite system operators for the distribution and exhibition of licensed Pictures on digital basic tiers that do not meet the requirements for exhibition on Pay Television under the License Agreements."  (*Id.*)

- • <u>Third</u>, BVT alleges that Starz breached the License Agreements by "delivering licensed Pictures for exhibition over the Internet using substandard transmission quality."  (*Id.* at ¶ 24.)

BVT's remaining claims for relief all rest on one of these three purported breaches.

BVT's <u>second claim for relief</u> – breach of the implied covenant of good faith and fair dealing – rests solely on allegations relating to the "rent-a-system" provisions.  (*Id.* at ¶ 28.)  BVT's <u>third claim for relief</u> – copyright infringement – rests solely on allegations regarding Starz's alleged breaches of obligations regarding "the distribution and exhibition of licensed Pictures on digital basic tiers." (*Id.* at ¶ 32.)  The exhibition of Pictures on these tiers allegedly breaches BVT's copyright interests in the Pictures.[1]  (*Id.* at ¶ 33.)  BVT's <u>fourth claim for relief</u> – declaratory judgment – rests solely on allegations relating to the "rent-a-system" provisions, and seeks a declaration that Starz has certain obligations in connection with those provisions.  (*Id.* at ¶ 45.)

**B.   <u>The Rent-A-System "Dispute"</u>**

Under the 1999 License Agreement, BVT must offer to Starz, and Starz must accept for licensing, "all motion pictures with an MPAA rating no more restrictive

---

[1] BVT has no standing to assert this claim, because Starz (not BVT) is the exclusive copyright licensee of the Pictures in Television.  Nevertheless, copyright standing is not strictly a question of subject matter jurisdiction, *see HyperQuest, Inc. v. N'Site Solutions, Inc.* _ F. Supp. 2d _, 2008 WL 2446206, *2 (N.D. Ill. 2008); thus, the Court need not resolve the standing issue in order to rule in favor of Starz on the simple basis that Starz is not breaching any obligation (contractual or otherwise) regarding the exhibition of the Pictures on certain digital "tiers."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1 than 'R' or its equivalent which have their Initial Theatrical Release during the

2 Qualifying Period which [BVT] or any of its affiliates theatrically releases in the

3 Territory which have a run time greater than 60 minutes." (UF at ¶ 4, Turner Decl.,

4 Ex. B at pps. 7-8, § 4, as amended by pps. 5-6, ¶ 19, of the Third Amendment

5 (Turner Decl., Ex. C).) The Agreement contemplates that such qualifying Pictures

6 may include films that are not produced or financed by BVT or its affiliates, but are

7 acquired by BVT for theatrical distribution. Specifically, Section 4 of the 1999

8 License Agreement provides in pertinent part:

9     A Picture which is not produced or financed by Licensor [BVT] or its

10     affiliates but is theatrically distributed in the Territory by Licensor or

11     its affiliates on a "rent-a-system" basis . . . need not, subject to

12     Licensor's obligations under the covenants and this Section 4, be made

13     available to [Starz] hereunder, but Licensor shall endeavor in good faith

14     to cause such picture to be included herein.

15 (UF at ¶ 5, Turner Decl., Ex. B at pps. 7-8 § 4).) Simply put, feature films that BVT

16 acquires on a "rent-a-system" basis, and that BVT theatrically distributes, may be

17 licensed to Starz so long as those films otherwise qualify for licensing.

18     Furthermore, given this language, the parties inserted into the same section of

19 the License Agreement an express covenant of good faith and fair dealing.

20 Subsection (b) of Section 4 provides: "It is understood between the parties that

21 neither party shall exercise its rights hereunder with the intent to and in such a way

22 as to frustrate the purpose of this Agreement." (UF at ¶ 6, Turner Decl., Ex. B at p.

23 8, § 4(b)).)

24     BVT has released and distributed just *one* feature film on a rent-a-system

25 basis, *Apocalypto*, since the parties entered into the 1999 License Agreement in

26 August 1999. (UF at ¶ 7.) Starz <u>accepted</u> *Apocalypto* for licensing under the 1999

27 License Agreement. (UF at ¶ 8.)

28     BVT's allegations to support Starz's purported repudiation of its rent-a-

81107.00005/39984

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    system obligations are inconsistent with the indisputable evidence.  The February

2    13, 2007, letter referenced in BVT's Counterclaim was a letter from Starz's outside

3    transactional counsel, Kenneth Ziffren, addressing BVT's stated intention to acquire

4    rent-a-system films.  (UF at ¶ 9, Turner Decl., Ex. D.)  In that letter, Mr. Ziffren

5    pointed out that rent-a-system films are included in the License Agreement only if

6    they meet basic qualifiers as to length and rating and are "theatrically distributed"

7    by BVT.  (*Id.*)  Mr. Ziffren proffered Starz's interpretation of the term "theatrically

8    distributed," which is not defined in the License Agreement, stating that full-time

9    BVT personnel must handle the distribution and marketing of a film for it to be

10   "theatrically distributed" by BVT.  Mr. Ziffren then stated (unremarkably) that

11   BVT's failure to adhere to the requirements for qualifying pictures "could well

12   cause [Starz] to decline to accept any or all Picture(s) in question for inclusion under

13   the Output Agreements."  (*Id.*)  Mr. Ziffren concluded that "[w]e trust this will not

14   be necessary," making it clear that Starz did not expect BVT to offer non-qualifying

15   pictures and did not expect to reject any pictures offered by BVT.  (*Id.*)

16        In-house counsel for BVT, Michael Thornton, responded to Starz's February

17   13 letter with a one-page letter dated March 9, 2007.  (UF at ¶ 10, Turner Decl., Ex.

18   E.)  The letter stated that "BVT intends to abide by the Output Agreements, using

19   good faith efforts to procure the Pay Television rights, with respect to any and all

20   'rent a system' pictures."  (*Id.*)  Mr. Thornton added that he disagreed with Starz's

21   interpretation of the term "theatrically distributed" and stated that BVT would be

22   relying on its own interpretation of the term.  (*Id.*)  Mr. Thornton's March 9 letter

23   appeared to conclude the parties' rent-a-system "dispute."

24        After Starz filed its Complaint on March 22, 2007, however, BVT suddenly

25   revived the rent-a-system "dispute."  Mr. Thornton sent another letter to Starz's

26   outside counsel, Kenneth Ziffren, on April 25, 2007, that purported to "supplement"

27   his previous March 9 letter.  Mr. Thornton stated in the April 25 letter that "BVT or

28   a BVT affiliate  . . .  now has opportunities to enter into contractual arrangements

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  with third parties to acquire rent-a-system theatrical distribution and pay television

2  rights to slates of motion pictures over a term of years."  (UF at ¶ 11, Turner Decl.,

3  Ex. F.)  Mr. Thornton asserted that "[t]hese proposed rent-a-system films meet all

4  criteria for Pictures under the Agreement, and if a deal is concluded, BVT or

5  Affiliate intends to deliver such pictures to Starz under the Agreement." (*Id.*)  Mr.

6  Thornton demanded that Starz confirm "within five business days of the date of this

7  letter" that it will accept all films that are theatrically distributed by BVT or its

8  affiliates and that "otherwise meet the requirements of the Agreement." (*Id*.)  BVT

9  did not identify which "affiliate" was looking to acquire rent-a-system films, the

10  title of any of the films within the "slates of motion pictures,"  or the "third parties"

11  with whom it was supposedly negotiating to acquire the films.  <u>In short, BVT was</u>

12  <u>demanding that Starz definitively confirm that it would accept an entire slate of</u>

13  <u>films sight unseen.</u>  Mr. Thornton concluded his April 25 letter: "Anything less than

14  such unqualified confirmation will constitute an anticipatory repudiation of Starz's

15  obligations under the Agreement, and BVT will take appropriate legal action." (*Id.*)

16     Mr. Ziffren responded in a May 1, 2007 letter.  He suggested that BVT

17  provide information concerning who was licensing the films to BVT (*i.e.*, who

18  owned the films), what other rights (beyond theatrical and pay television rights)

19  BVT was acquiring, the number of pictures and their release dates, and BVT's

20  expected expenditures on advertising the theatrical releases.  (UF at ¶ 12, Turner

21  Decl., Ex. G.).  Mr. Ziffren explained that Starz could not conclusively decide

22  whether a film qualifies for inclusion under the 1999 License Agreement without

23  knowing basic information concerning the film:

24     We would eventually get all this information pursuant to the applicable

25     provisions of the Agreement.  If we get this kind of quality information

26     and check it out for accuracy, we might then be able to carry on

27     discussions with you concerning whether the pictures in question do in

28     fact qualify for inclusion under the Agreement, but in the absence of

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1     such information, it's virtually impossible for Starz to give you an

2     answer, whether or not required to do so.

3   (*Id.*)

4        The information requested by Mr. Ziffren's letter was contractually important

5   to Starz.  Large studio output deals typically obligate a licensee like Starz to license

6   each and every qualifying film that is proffered.  The licensee often pays license

7   fees of millions of dollars for <u>each</u> licensed film.  A studio like BVT thus has a

8   financial incentive to funnel as many films through the output deal as possible.

9   Given this, the 1999 License Agreement contains provisions that prevent BVT from

10  passing "junk" films on to Starz.  Among other things, the Agreement requires that

11  the films licensed to Starz be more than 60 minutes in length, with a rating of "R" or

12  less restrictive, and that they be "theatrically distributed" by BVT.  (UF at ¶ 2,

13  Turner Decl., Ex. B at pps. 7-8, § 4).)  Further, to prevent BVT from violating the

14  spirit of the License Agreement, Section 4 contains an express covenant of good

15  faith and fair dealing that prohibits BVT from exercising its rights "in such a way as

16  to frustrate the purposes of this Agreement."  (*Id.*)  This express covenant might

17  apply, for example, if BVT demanded that Starz license a slate of "B-movie" films,

18  61 minutes each, that are being "theatrically distributed" by BVT in a single theater

19  in a small-town in rural America.

20       BVT's in-house counsel, Michael Thornton, responded in a May 8, 2007

21  letter.  He again refused to provide a single detail concerning the "slate of films"

22  that BVT was supposedly acquiring, asserting that information such as the number

23  of films and the titles was somehow "wholly irrelevant to the 'rent-a-system' issue."

24  (UF at ¶ 13, Turner Decl., Ex. H.).  Mr. Thornton concluded his letter with yet

25  another demand that Starz agree to accept a slate of unidentified films:

26       [A]ssuming the pictures will otherwise meet the criteria under Section

27       4 of the Agreement (as we agree they must), does Starz agree, or not,

28       that films acquired by BVT from third parties for theatrical distribution

1  substantially on the terms set forth in my letter of April 25 will qualify

2  for inclusion under the Agreement as "rent-a-system" pictures?  A

3  simple yes or no by the close of business on May 14 is respectfully

4  requested.

5  (*Id.*)

6  Starz responded in a May 10, 2007 letter from Mr. Ziffren.  Mr. Ziffren

7  pointed out that BVT was inexplicably refusing to provide salient information

8  concerning the films that it was purportedly acquiring.  (UF at ¶ 14, Turner Decl.,

9  Ex. I.)  Mr. Ziffren again noted that Starz could not make an informed judgment of

10  whether films qualify for licensing without specifics concerning the films.  (*Id.*)

11  BVT never provided any such information.  Instead, BVT filed its Counterclaim,

12  asserting an anticipatory repudiation <u>based entirely</u> on this exchange of letters

13  between counsel for the parties.

14  In fact, discovery has confirmed that BVT's demands were speculative, and

15  did not reflect an actual intention to take advantage of such an "opportunity" to

16  acquire additional films.  (Steinsapir Decl., Ex. R (Cohen Depo. at 210:2-211:12)

17  (stating that agreement on potential rent-a-system deal was never reached).)

18  **C.   <u>The "Packaging" Dispute</u>**

19  The 1999 License Agreement grants Starz a license to exhibit BVT's motion

20  pictures on Pay Television.  (UF at ¶ 2, Turner Decl., Ex. B at p. 4, § 2.)  Pay

21  Television is defined in the 1999 Agreement as television exhibition to subscribers

22  "upon payment by the subscribers of a monthly subscription fee  . . . . All such Pay

23  Television transmissions shall be on a <u>commercial-free, non-advertiser supported</u>

24  <u>basis for which there is an additional charge for such channel or service over and</u>

25  <u>above the obligatory basic cable subscription charge</u>."  (UF at ¶ 15, Turner Decl.,

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Ex. B at pps. 2-3, § 2 (emphasis supplied).)[2]

Traditionally, cable and satellite operators offered customers an entry level, basic cable subscription that included over-the-air local and distant broadcast channels, public access channels and other news and entertainment channels; an "expanded basic" cable tier that included all the basic cable channels plus a wide variety of advertiser-supported channels; and options to add on to these basic tiers additional premium, non-advertiser supported channels, such as Starz, either individually or in premium tiers.  (Steinsapir Decl., Ex. T (Waysdorf Depo. at 48:16-49:10).)  With the advent of digital cable television, cable operators have moved toward structuring higher level tiers – above the basic and expanded basic cable tiers – to include packages of premium content for higher subscription fees. The exact structure of these "tiers" varies substantially from cable or satellite system to system.  (Steinsapir Decl., Ex. T (Waysdorf Depo. at 49:11-50:4).)  Although digital tiers may include separate channels that are advertiser-supported and non-advertiser supported, such tiers remain above the obligatory basic cable service, and even above the expanded basic cable level.  (UF ¶ 19 (Waysdorf Decl. at ¶ 5).)

Starz's channels and services are commercial free and those channels and services are not supported by advertisers.  (UF ¶ 17 (Waysdorf Decl. at ¶ 3).) Starz's services are not, and never have been, exhibited on any cable or satellite

---

[2]   The 1993 License Agreement also grants Starz a license to exhibit BVT pictures on "Premium Pay Television Services," defined as television services "sold as a whole . . . providing continuous programming in the medium of Pay Television." Pay Television is defined as transmission of television services to subscribers "upon payment by the subscribers of a monthly subscription fee."  "Premium Pay Television Services" does not include services "supported by the sale of any advertising or sponsorship" or "Basic Cable Networks."  (UF at ¶ 1, Turner Decl., Ex. A at §§ 1, 1(b)(iv), 1(b)(v), 1(b)(x).)  BVT's Counterclaim does not refer specifically to this language, and they do not allege that the 1993 Agreement articulates a different standard than the 1999 Agreement or, if so, what that standard would be.  As a practical matter, Starz believes the standard to be functionally equivalent and focuses its analysis here on BVT's allegations, which concern the principally operative 1999 Agreement.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   operator's "obligatory basic cable" tier.  (UF ¶¶ 17-18 (Waysdorf Decl. at ¶ 4).)  To

2   the contrary, Starz's services are <u>uniformly and exclusively</u> offered in a manner that

3   requires consumers to pay an additional, higher charge over and above the

4   obligatory basic cable subscription charge.  (UF ¶ 19 (Waysdorf Decl. at ¶ 5).)

5   Starz has worked closely with its cable and satellite affiliates to ensure that Starz is

6   always offered in this manner.

7          In late 2004, in a letter from Robert Mendez, BVT requested information

8   regarding Starz's packaging and affiliation agreements regarding two cable

9   operators, Mediacom Communications and Atlantic Broadband.  (Waysdorf Decl.,

10  Ex. J.)  Starz provided the requested information by letter dated December 10, 2004.

11  This letter explained the placement of Starz's service on these cable operator's

12  product tiers, including their digital service tiers, and its complete compliance with

13  the Agreements.  (Waysdorf Decl., Ex. K.)  In a response dated January 11, 2005,

14  BVT expressed the view that Starz's inclusion in digital tiers along with other

15  programming services was inconsistent with the language requiring that Pay

16  Television be offered "for an additional charge for such channel or service . . ."

17  (Waysdorf Decl., Ex. L.)  In essence, the letter questioned whether any "tiering" was

18  permitted at all, an insupportable position that BVT has <u>not</u> asserted in this lawsuit.

19  This letter included notice of breach under paragraph 27 of the License Agreement.

20         Starz responded by letter dated January 28, 2005.  (Waysdorf Decl., Ex. M.)

21  This letter explained that Starz's carriage in a tier with other programming does not

22  violate the 1999 License Agreement because Starz still exhibits BVT's motion

23  pictures on a commercial-free, non-advertiser supported basis "for which there is an

24  additional charge for such channel or service over and above the obligatory basic

25  cable subscription charge."  *Id*.  Starz further noted that the 1999 License

26  Agreement does not require that Starz be offered solely on a stand-alone basis.  *Id.*

27  BVT did not contest this point, and in fact has acknowledged in its Counterclaim

28  that Starz products may be placed in "tiers."  (Counterclaim at ¶ 17.)

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1       In May 2005, Starz representatives met with representatives from BVT to

2   further explain how Starz's services are packaged on cable and satellite systems so

3   that BVT could understand why Starz's carriage on those systems complied with the

4   1999 License Agreement.  (Waysdorf Decl., Ex. M.)  BVT did not contest the facts

5   and explanation either at the meeting itself, or afterwards.  (*Id.*)

6       **D.**    **The "Internet Transmission Quality" Dispute**

7       BVT alleges that Starz breached the License Agreements by "delivering

8   licensed Pictures for exhibition over the Internet using substandard transmission

9   quality."  (Counterclaim at ¶ 24.)  As relevant here, Starz operates the Vongo and

10  Starz Play services, which permit users both to view the Starz movie channel via

11  Internet transmission, and to download certain movies for limited viewing.  (UF at ¶

12  20.)  Prior to these services, Starz operated "Starz Ticket," which is substantially the

13  same service.  (UF at ¶ 21.)  On November 1, 2005, Starz and BVT executed a Third

14  Amendment to the License Agreement, whereby BVT expressly "confirm[ed] that

15  the product currently known as 'Starz Ticket' (which is currently made up of an

16  Internet-delivered on-demand Programming Service and the Programming Service

17  known as 'STARZ') . . . comp[lies] with the terms of this Agreement . . ."  (UF at ¶

18  22 (Turner Decl., Ex. C at p. 2 § 5 (emphasis added).)

19      The 1999 License Agreement specifically requires notice of any alleged

20  breaches of the Agreement so that the party has an opportunity to investigate and

21  cure any alleged breach:

22      In the event a party breaches a representation, warranty or undertaking

23      under this Agreement, it shall have the right to cure such breach within

24      thirty (30) days of the delivery of notice of such breach from the non-

25      breaching party.

26  (UF at ¶ 23, Turner Decl., Ex. B (1999 Agreement) at p. 18, § 27.)  Subsequent to

27  BVT's acknowledgement that Starz Ticket complied with the terms of the 1999

28  Agreement, BVT never provided Starz with notice that Starz was allegedly in

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  breach of any obligations regarding the Internet transmission quality of the Pictures.

2  (UF at ¶ 24, Turner Decl. at ¶ 15; Steinsapir Decl., Ex. R (Cohen Depo. at 215:9-14,

3  216:11-18).)

4  **III.   LEGAL STANDARDS GOVERNING MOTIONS FOR SUMMARY**

5  **JUDGMENT**

6  The standards governing this motion are familiar.  A party is entitled to

7  summary judgment if it establishes that there is no genuine issue as to any material

8  fact and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

9  Where, as here, the nonmoving party, *i.e.* BVT, has the burden of proof at trial, the

10  moving party, *i.e.* Starz, need only point out "that there is an absence of evidence to

11  support the nonmoving party."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

12  This burden is met by simply "'showing' – that is, pointing out to the district court –

13  that there is an absence of evidence to support the nonmoving party's case."  *Id.*

14  Once the moving party meets this burden, the burden shifts to the non-moving party

15  to "come forward with 'specific facts showing that there is a genuine issue for

16  trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

17  (1986) (quoting Fed. R. Civ. P. 56(e)).  BVT will be unable to carry that burden.

18  **IV.   SUMMARY JUDGMENT SHOULD BE GRANTED ON THE**

19  **COUNTERCLAIM.**

20  **A.   Starz is Entitled to Summary Judgment on Those Portions of**

21  **BVT's First, Second and Fourth Claims for Relief Relying on**

22  **Alleged Breaches of the "Rent-a-System" Provision.**

23  **1.   The Breach of Contract Claim**

24  BVT alleges that Starz breached the 1999 License Agreement by refusing to

25  honor its obligation to accept qualifying rent-a-system films.  (Counterclaim, ¶ 23).

26  That claim borders on frivolous.  In fact, Starz accepted the one and only rent-a-

27  system film that BVT has distributed and offered to Starz since the inception of the

28  Agreement, *Apocalypto*.  (UF at ¶¶ 7-8.)

1    BVT alleges in the alternative that Starz anticipatorily repudiated its rent-a-

2    system obligations.  (Counterclaim ¶ 23.)  That claim likewise fails as a matter of

3    law.  "An anticipatory breach of contract occurs on the part of one of the parties to

4    the instrument when he positively repudiates the contract by acts or statements

5    indicating that he will not or cannot substantially perform essential terms thereof."

6    *Guerrieri v. Severini*, 51 Cal. 2d 12, 18 (1958).  A repudiation may be "express or

7    implied."  *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975).

8    BVT cannot and does not allege that Starz impliedly repudiated the contract.

9    "[A]n implied repudiation results from conduct where the promisor puts it out of his

10   power to perform so as to make substantial performance of his promise impossible."

11   *Taylor*, 15 Cal. 3d at 137.  There is no allegation, nor could there be, that Starz has

12   "put it out of its power" to accept and license rent-a-system films from BVT.

13   Any claim of express repudiation of contract likewise fails as a matter of law.

14   An express repudiation requires a "clear, positive, unequivocal refusal to perform."

15   *Taylor*, 15 Cal. 3d at 137.  That is, "[a]nticipatory breach must appear only with the

16   clearest terms of repudiation of the obligation of the contract."  *Guerrieri*, 51 Cal.

17   2d at 18; *see also Pacific Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*, 411

18   F.2d 889, 894 (9th Cir. 1969) ("To justify the adverse party in treating the

19   renunciation as a breach, the refusal to perform . . . must be distinct, unequivocal,

20   and absolute.").

21   Here, the correspondence at issue lacks any refusal to perform, let alone a

22   refusal to perform that is clear, positive, unequivocal, and absolute.  The February

23   13, 2007 letter from Mr. Ziffren, which BVT relies upon in its Counterclaim,

24   contains no repudiation whatsoever.  As set forth in detail above, Mr. Ziffren simply

25   pointed out that a film qualifies for licensing under the License Agreements only if

26   it is "theatrically distributed" by BVT, and that if BVT's distribution of any rent-a-

27   system films were not in good faith, and were not "theatrical distribution" as that

28   term was used in the agreement, this "could well cause" Starz to decline to accept

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1   the films.  This is not a repudiation at all; it is an unremarkable statement that Starz

2   will comply with its obligations to license rent-a-system films so long as BVT

3   complies with its obligation to distribute them theatrically and in good faith.

4   Moreover, Mr. Ziffren's statement that, depending on circumstances, Starz "could

5   well" refuse to accept a rent-a-system film is not so definite, concrete, or

6   unequivocal that it could constitute an anticipatory repudiation under any

7   circumstances, particularly given Mr. Ziffren's affirmation  that "[w]e trust this will

8   not be necessary."  (UF at ¶  9, Turner Decl., Ex. D.)

9        In the exchange of letters that followed, far from repudiating its obligations,

10  Starz reaffirmed them.  In its May 1, 2007 letter, for example, Starz observed that

11  BVT appeared to be manufacturing a claim of anticipatory breach, and Starz took

12  the opportunity to reiterate that it had fully performed its obligations in the past and

13  would continue to do so.  (UF at ¶  11, Turner Decl., Ex. G.)

14       Any claim that Mr. Ziffren's February 13, 2007, letter attached extra-

15  contractual conditions to Starz's performance, thus resulting in an anticipatory

16  repudiation, is without basis.  Only the refusal to perform except upon conditions

17  not provided for in the contract may constitute a repudiation.  As set forth in the

18  Restatement (Second) of Contracts, § 250, comment b, "language that under a fair

19  reading amounts to a statement of intention not to perform except on conditions

20  which go beyond the contract constitutes a repudiation."  On the other hand, "when

21  there is a disagreement as to the meaning of terms in a contract, one party's offer to

22  perform in accordance with his interpretation is not itself an anticipatory breach."

23  *Pacific Coast Eng'g*, 411 F.2d at 894*; see also Golden W. Baseball Co. v. City of*

24  *Anaheim*, 25 Cal. App. 4th 11, 49 n.43 (1994) ("At most there was a good faith

25  dispute on some of the contract terms, a far cry from repudiation.").

26       Here, Mr. Ziffren's February 13, 2007, letter did not attach any additional

27  conditions to Starz's performance.  Mr. Ziffren confirmed that Starz would accept

28  any qualifying rent-a-system films that were "theatrically distributed" by BVT.  Mr.

1  Ziffren went on to explain how Starz interprets the term "theatrically distributed,"

2  an undefined term that could be interpreted in a variety of ways by parties involved

3  in feature film distribution.  As the Ninth Circuit held in *Pacific Coast Eng'g*,

4  Starz's offer to perform under its construction of the undefined term "theatrically

5  distributed" did not attach new or different conditions to the contract.

6       Moreover, even where a party indicates that its performance is subject to

7  terms not contained in the contract (which Starz's February 13 letter did not do),

8  there still must be an unequivocal refusal to perform in order to find an anticipatory

9  repudiation.  *See Pacific Coast Eng'g*, 411 F.2d at 895.  Mr. Ziffren's February 13

10  letter does nothing of the kind.

11       Finally, this dispute over Starz's rent-a-system obligations appears to have

12  been manufactured for the purposes of BVT's Counterclaim.  As noted above,

13  discovery has confirmed that BVT did not have any agreements to acquire

14  additional films that would be subject to the rent-a-system provisions.  (Steinsapir

15  Decl., Ex. R (Cohen Depo. at 210:2-211:12) (stating that agreement on potential

16  rent-a-system deal was never reached).)  Thus, BVT's demands were entirely

17  speculative, apparently designed to induce some sort of anticipatory repudiation

18  from Starz.

19       In short, Starz has accepted the one and only rent-a-system film that has been

20  offered to it.  Starz has never repudiated its obligation to accept qualifying rent-a-

21  system films from BVT.  Starz has never conditioned its acceptance of rent-a-

22  system films upon conditions that are not contained in the contract.  Thus, BVT's

23  claim that Starz breached and/or repudiated its rent-a-system obligations fails as a

24  matter of law, and partial summary judgment should be granted on this component

25  of BVT's first claim for breach of contract.

26                    **2.    Breach of the Implied Covenant**

27       BVT's Second Counterclaim for Breach of the Implied Covenant of Good

28  Faith and Fair Dealing is duplicative of the First Counterclaim for Breach of

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    Contract in that it is identically premised on Starz's alleged anticipatory breach of

2    its rent-a-system obligations.  Under California law, the implied covenant claim fails

3    as well.

4        In *Celador Int'l Ltd. v. The Walt Disney Co.*, 347 F. Supp. 2d 846 (C.D. Cal.

5    2004), Judge Cooper discussed the relationship between contract and implied

6    covenant claims.  The Court held that "if the allegations [of an implied covenant

7    claim] do not go beyond the statement of a mere contract breach and, relying on the

8    same alleged acts, simply seek the same damages or other relief already claimed in a

9    companion contract cause of action, they may be disregarded as superfluous as no

10   additional claim is actually stated."  *Id. at 852*; *see also Bionghi v. Metropolitan

11   Water District*, 70 Cal. App. 4th 1358, 1370 (1999) (where "breach of the implied

12   covenant relies on the same acts, and seeks the same damages, as its claim for

13   breach of contract, the cause of action for breach of the implied covenant is

14   duplicative of the cause of action for breach of contract and may be disregarded.").

15       As in *Celador* and *Bionghi*, BVT's implied covenant claim is identical to its

16   claims for actual and anticipatory breach of contract.  The Second Counterclaim

17   parses out Starz's alleged breach into three claims.  BVT first alleges that Starz

18   breached the implied covenant by "threatening not to accept qualifying Pictures

19   acquired by BVT through rent-a-system theatrical distribution arrangements."

20   (Counterclaim, ¶ 28(i)).  This allegation is identical to the allegation of anticipatory

21   repudiation in the breach of contract claim.  BVT further alleges that Starz breached

22   the implied covenant by "(ii) deliberately failing and refusing to confirm its

23   intention to license and pay for qualifying pictures; and (iii) requiring BVT to

24   adhere to obligations not called for by the license Agreements, as conditions

25   precedent to Starz's performance."  (Counterclaim, ¶ 28(ii) and (iii).)  As is evident

26   from Paragraph 16 of the Counterclaim, these allegations are merely restatements of

27   BVT's claim of anticipatory breach.  (Counterclaim, ¶ 16.)

28       BVT's implied covenant claim alleges the same facts as its breach of contract

1   claim and it seeks the same relief sought by way of that First Counterclaim.  The

2   implied covenant claim therefore fails.  Partial summary judgment should be granted

3   on the entirety of this purported second claim for relief in the Counterclaim.

### 3.   The Declaratory Relief Claim

5   BVT's fourth claim seeks the following declaratory relief: "(i) Starz is

6   obligated to license and pay for qualifying rent-a-system Pictures acquired by BVT

7   on substantially the bases set forth in paragraph 45 [*sic* – it appears BVT means

8   paragraph 41] above; and [that] (ii) rent-a-system 'theatrical distribution' has the

9   meaning set forth in the License Agreements, rather than the extra-contractual

10   meaning ascribed to such terms by Starz."  (Counterclaim at ¶ 45.)

11   A federal court may resolve only actual "cases or controversies."  U.S. Const.

12   art. III, § 2.  The Declaratory Judgment Act, 28 U.S.C. § 2201, "in its limitation to

13   'cases of actual controversy,' manifestly has regard to the constitutional provision

14   and is operative only in respect to controversies which are such in the constitutional

15   sense."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937).  "A

16   'controversy' in this sense . . . must be definite and concrete, touching the legal

17   relations of parties having adverse legal interests.  It must be a real and substantial

18   controversy admitting of specific relief through a decree of a conclusive character,

19   as distinguished from an opinion advising what the law would be upon a

20   hypothetical state of facts."  *Id.* at 240-41 (citations omitted).

21   As discussed above, neither Starz nor this Court even know; (1) what "slate"

22   of films BVT sought to acquire and then license to Starz; (2) from whom BVT

23   sought to acquire such films; (3) who financed or produced these films; or even (4)

24   the number of films it sought to acquire.  Indeed, there is no evidence that BVT ever

25   had an agreement to acquire rent-a-system films.  What BVT is asking the Court to

26   do is to construe the contract in a vacuum, under a hypothetical set of facts that may

27   no longer exist, and then issue some sort of declaration that Starz is obligated to

28   license films on the conditions "set forth in the License Agreements."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Counterclaim at ¶ 45.  As discussed above, Starz does <u>not</u> dispute that it must

2  license films on the conditions "set forth in the License Agreements."  Rather, what

3  this claim appears to be is a request that the Court issue an advisory opinion on what

4  certain contractual terms mean when there is no actual controversy regarding the

5  parties' obligations thereunder, *i.e.* a request for "an opinion advising what the law

6  would be upon a hypothetical state of facts."  *Aetna Life Ins. Co.*, 300 U.S. at 241.

7  Not only would such a monumental effort be a waste of the Court's time and

8  resources, it would be constitutionally impermissible.  *See id.*; U.S. Const. art. III, §

9  2 (limiting "judicial power" to "cases" or "controversies").

10  Accordingly, the Court should issue judgment as a matter of law in Starz's

11  favor on the entirety of the fourth claim for relief.

12  **B.**  **Starz is Entitled to Summary Judgment on Those Portions of**

13  **BVT's First and Third Claims for Relief Relating to Exhibition of**

14  **Starz Channels on Certain Digital Cable Tiers.**

15  BVT alleges in its first and third claims for relief that Starz violated the

16  License Agreements by "entering into agreements with one or more cable and/or

17  satellite system operators for the distribution and exhibition of licensed Pictures on

18  digital basic tiers that do not meet the requirements for exhibition on Pay Television

19  under the License Agreements."  (Counterclaim at ¶¶ 24 and 33.)  This claim also

20  fails as a matter of law and undisputed fact.

21  The goal of contract interpretation is "to discern and enforce the parties'

22  mutual intent at the time the contract was formed."  *Thor Seafood Corp. v. Supply*

23  *Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) (citing Cal. Civ. Code §

24  1636; *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992)).  "Where the

25  contract is clear and explicit, the plain language of the contract governs."  *Id.* (citing

26  *Bank of the West*, 2 Cal. 4th at 1264).

27  The plain language of the 1999 License Agreement states that Starz may

28  exhibit the licensed motion pictures "on a commercial-free, non-advertiser

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   supported basis for which there is an additional charge for such channel or service

2   over and above the <u>obligatory basic cable subscription charge</u>." (1999 License

3   Agreement § 1(n)(emphasis added).) Thus, Starz may properly exhibit the motion

4   pictures in tiers charging an additional monthly fee above the lowest "obligatory"

5   basic subscription charge, so long as the pictures are exhibited on channels that are

6   commercial-free and non-advertiser supported.

7   Starz has fully complied with these contractual requirements, with room to

8   spare. The following facts are undisputed: First, Starz's channels and services are

9   always offered on a commercial-free, non-advertiser supported basis. (UF ¶ 16

10   (Cohen Depo. at 226:5-11) (Waysdorf Decl. at ¶ 3.)). BVT has offered, and can

11   offer, no evidence to the contrary. Second, cable and satellite operators offer entry

12   level basic cable tiers – including "basic cable," (the only "obligatory basic cable"

13   tier contemplated by the Agreement) – for lower subscription charges than <u>any</u> tier,

14   including any digital service tier, in which Starz's channels and services appear.

15   Thus, the digital service tiers vaguely referenced in the Counterclaim are not, and

16   cannot be, the prohibited, lowest "obligatory basic cable" tier referred to in the

17   Agreement. (UF ¶ 22 (Waysdorf Decl. ¶ 6).) Third, Starz's channels and services

18   are not offered <u>anywhere</u> at the "obligatory basic cable" level, and are in fact offered

19   only for higher subscription fees, "over and above" those charged for the

20   "obligatory basic cable" level. (UF ¶¶ 16-18, Waysdorf Decl. at ¶ 3-4)).

21   Thus, the undisputed facts show that Starz is fully in compliance with its

22   contractual obligations. No evidence exists that any of Starz's channel or service

23   has ever been offered as part of the "obligatory basic cable" tier. To the contrary,

24   Starz's channels or services have always been offered on tiers with an additional

25   charge over and above (in reality, substantially above) the subscription charge for

26   "obligatory basic cable." BVT has failed to allege, and will be unable to come

27   forward with, any specific facts supporting its claim that Starz has violated the

28   License Agreements with respect to any specific cable or satellite systems. Indeed,

1  BVT's counterclaim appears to be asserted for purely retaliatory reasons.

2      To compound the invalidity of BVT's packaging claim, the basis for BVT's

3  complaint has shifted over time and remains unclear.  In 2005, BVT suggested that

4  the 1999 License Agreement might prohibit any bundling of Starz channels with

5  other cable channels.  (Waysdorf Decl., Ex. L ("no additional charge is being made

6  by Mediacom or Atlantic Broadband for the SEG channel on top of the charge for a

7  bundle of other channels").)  BVT now concedes that Starz's channels may be

8  bundled into packages. (Counterclaim at ¶ 17.).

9      Instead, BVT now argues that carriage of Starz on unspecified "digital" tiers

10  (for which BVT does not provide any specific evidence or examples), violates the

11  License Agreements because these alleged, unidentified tiers may include individual

12  <u>non-Starz channels that</u> would not satisfy the requirements for <u>Starz's channels</u>

13  under the Agreements.  (Counterclaim ¶ 33).  But these allegations are wholly

14  without basis in the actual plain language of the Agreements, which says nothing

15  about the content of other channels that may be included or offered on the tiers on

16  which Starz's channels and services may also be offered.  The contractual language

17  simply requires that Starz's channels and services themselves be commercial-free

18  and offered for an additional charge over the obligatory basic cable subscription

19  charge.  Starz's channels and services fully comply with these requirements, and

20  BVT offers no contrary evidence of any kind.

21      Thus, no genuine issue of fact exists regarding BVT's retaliatory "packaging"

22  claims.  Those claims are without basis in law or fact and must be dismissed under

23  Rule 56.

24  **C.**  **<u>Starz Is Entitled to Summary Judgment on Those Portions of</u>**

25  **<u>BVT's First Claim Relating to Alleged Breaches of the License</u>**

26  **<u>Agreements Concerning "Internet Transmission Quality."</u>**

27      BVT alleges in its first claim for relief that Starz breached the 1999 License

28  Agreement by "delivering licensed Pictures for exhibition over the Internet using

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  substandard transmission quality." (Counterclaim at ¶ 25.) This claim fails as a

2  matter of law for two distinct and independent reasons.

3      First, BVT has no evidence to support this claim. Indeed, BVT has admitted,

4  both prior to and during this litigation, that Starz's Internet transmissions comply

5  with the 1999 License Agreement. Thus, this claim fails because BVT cannot meet

6  its burden of "com[ing] forward with specific facts showing that there is a genuine

7  issue for trial" on this claim. *Matsushita*, 475 U.S. at 587; *see also Eichman v.*

8  *Fotomat Corp.*, 880 F.2d 149, 163 (9th Cir. 1989) (summary judgment appropriate

9  where party asserting breach "presented no relevant evidence supporting a finding

10  that the contract" had been breached).

11     In an October 2005 amendment to the 1999 License Agreement, BVT

12  expressly "confirm[ed] that the product currently known as 'Starz Ticket' (which is

13  currently made up of an Internet-delivered on-demand Programming Service and the

14  Programming Service known as 'STARZ') . . . comp[lies] with the terms of this

15  Agreement . . ." (UF at ¶ 22 (Turner Decl. at Ex. C p. 2, § 5) (emphasis added).)[3]

16  At deposition, Dan Cohen, BVT's Rule 30(b)(6) witness on Topics of Internet

17  transmission quality (UF at ¶ 25), testified that while he believed BVT had

18  "concerns about the quality," he was unaware of any actual "testing that BVT has

19  done in connection with Vongo to determine whether or not it meets the

20  transmission and quality standard set forth in the contract." (Steinsapir Decl., Ex. R

21  (Cohen Depo. at 214:7-215:8).) Notably, BVT produced no expert or expert report

22  on this subject by the affirmative expert disclosure deadline, June 23, 2008. And

23  BVT has admitted elsewhere that it has no evidence to support this claim. For

24  example, Janice Marinelli, who was also designated under Rule 30(b)(6) to testify

25  on behalf of BVT on Internet Quality (UF at ¶ 25), testified that she also was not

26  

27  _____

[3]  "Starz Ticket" was a predecessor Internet service to Vongo, Starz's current on-demand Internet movie channel.

28

1   aware of "any instance[ ] . . . in which Starz is delivering license pictures for

2   exhibition over the Internet for substandard quality."  (UF at ¶ 28 (Marinelli Depo.

3   at 163:24-164:15.).)

4       Accordingly, in light of Ms. Marinelli's and Mr. Cohen's testimony (on

5   behalf of BVT), and BVT's acknowledgment that Starz Ticket "complies with the

6   terms of th[e 1999 License] Agreement," BVT has effectively admitted that it has no

7   evidence that Starz breached the 1999 License Agreement by "delivering licensed

8   Pictures for exhibition over the Internet using substandard transmission quality."

9   (Counterclaim at ¶ 24.)  Indeed, the evidence supports the contrary proposition , *i.e.*

10  that Starz has <u>not</u> breached the 1999 License Agreement by exhibiting Pictures over

11  the Internet using substandard transmission quality.

12      <u>Second</u>, and as an alternative basis to grant partial summary judgment on this

13  issue (in addition to BVT's complete failure of proof), BVT has <u>never</u> provided

14  notice to Starz that it is in breach of any provision of the 1999 License Agreement

15  regarding the quality of internet transmissions.  The 1999 License Agreement

16  contains a standard "notice and cure" provision:

17      In the event a party breaches a representation, warranty or undertaking

18      under this Agreement, it shall have the right to cure such breach within

19      thirty (30) days of the delivery of notice of such breach from the non-

20      breaching party.

21  (UF at ¶ 2, Turner Dec; Ex. B at p. 18 § 27.)  Section 20 of the Agreement provides

22  that "[a]ll such notices hereunder shall be in writing and shall be sent by certified

23  mail (return receipt requested) or registered mail . . ." to certain specific parties at

24  Starz or BVT (as the case may be).  (UF at ¶ 3, Turner Decl.. Ex. B Agreement at §

25  20).)

26      "A party complaining of the breach of a contract is not entitled to recover

27  therefor unless he has fulfilled his obligations."  *Wiz Tech., Inc. v. Coopers &*

28  *Lybrand*, 106 Cal. App. 4th 1, 12 (2003) (citation omitted).  BVT never provided

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  notice to Starz of a breach of any provision of the 1999 License Agreement

2  regarding the quality of internet transmissions.  Although BVT claims that it has

3  "discussed" the issue with Starz (but cannot provide <u>any</u> specific details regarding

4  these purported "discussions"), BVT has clearly never provided the written notice

5  required by Section 20.  Thus, Starz has been deprived of its contractual right to be

6  given notice of and an opportunity to cure any alleged breach.

7        BVT's failure to comply with the notice and cure provision of the 1999

8  License Agreement supplies an independent basis to grant partial summary

9  judgment on this issue.

10  **V.    CONCLUSION**

11        For the reasons stated herein, Starz respectfully requests that the Court grant

12  its Motion for Summary Judgment in its entirety, or in the alternative, grant partial

13  summary judgment on BVT's Counterclaim.

14  DATED: August 13, 2008          Respectfully submitted,

15

16                                  KINSELLA WEITZMAN ISER KUMP &
                                    ALDISERT LLP
17

18                                  HILL & ROBBINS, P.C.

19

20                                  By: _____

21                                  Michael J. Kump
                                    Attorneys for Plaintiff and Counterclaim
22                                  Defendant STARZ ENTERTAINMENT,
                                    LLC
23

24

25

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850